## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **UNIVERSITY OF GEORGIA ATHLETIC ASSOCIATION, INC.,** *Plaintiffs*, v. **Abdullah Store GAJAL, et al.,** *Defendants*. | Civil Action No. |

## DECLARATION OF MARSHALL M. CHALMERS

I, Marshall M. Chalmers, do hereby declare that the following facts are true and accurate to the best of my knowledge, information, and belief.

1. I am over eighteen (18) years old and am fully competent to attest to the matters stated herein.

2. I am Associate General Counsel for the University of Georgia ("UGA").

3. Among other duties and responsibilities, I am responsible for providing legal advice regarding UGA's copyright and trademark portfolio, including procurement, maintenance, licensing, and enforcement. I work in conjunction with UGA personnel, licensees, third-party providers, and outside counsel to ensure that the company's intellectual property portfolio is current, as well as to enforce the company's intellectual property rights which includes, but is not limited to, identifying third parties who are infringing the company's trademarks and assisting with UGA's efforts to combat these infringers.

**I.    BACKGROUND**

4. UGA is the flagship of the University System of Georgia. The University of Georgia Athletic Association, Inc. ("UGAA") is a Georgia nonprofit corporation and cooperative organization of UGA. UGAA is responsible for managing all aspects of UGA's athletics programs.

5. UGA's official school colors are red and black. The UGA mascot is a Bulldog, which dates back to November 1920, when a series of articles in the local Atlanta newspapers described the school's football team as "Bulldogs." As a result, UGA's sports teams are sometimes referred to as "the Georgia Bulldogs," "the Bulldogs," or "the Dawgs."

6. UGA's intercollegiate sports teams participate in the NCAA's Division I FBS as a member of the Southeastern Conference ("SEC"). In their more than 120-year history, UGA's varsity sports teams have won 45 national championships, 264 individual national championships, 172 conference championships, and 56 Olympic medals.

7. The Georgia Bulldogs football team plays its home games at historic Sanford Stadium on UGA's Athens campus. Games played at Sanford Stadium are famously played "between the hedges," referring to the English privet hedges that have surrounded the field since 1929.

8. Since its inaugural season in 1892, the UGA football team claims three consensus national championships (1942, 1980 and 2021). The AP and Coaches Polls have each voted the Georgia Bulldogs the national champion twice (1980 and 2021). The team has also been named the National Champion by at least one polling authority in four other seasons (1920, 1927, 1946 and 1968). The Georgia Bulldogs

football program has won 15 conference championships, including 13 SEC championships, tied for second-most in conference history, and have appeared in 59 bowl games, second-most all-time. The program has also produced two Heisman Trophy winners, four number-one National Football League draft picks, and many winners of other national awards. The team is known for its storied history, unique traditions, and rabid fan base, known as the "Bulldog Nation."

9. The Georgia Bulldogs are the reigning college football National Champions having beat the University of Alabama, 33-18, in the College Football National Championship Game on January 10, 2022, in Indianapolis, Indiana.

II.   THE UNIVERSITY OF GEORGIA'S TRADEMARKS

10. Federal trademark registrations related to the University of Georgia's athletic program are owned by UGAA.

11. UGAA owns numerous registered and common law trademarks (the "UGAA Marks") that include the words BULLDOGS, DAWGS, and UGAA's well known logos and design marks including, but not limited to, U.S. Registration Nos.: 1249346, 1252488, 1276534, 1286481, 1286482, 1945116, 2237895, 3027008, 3040390, 3040391, 3044738, 3065107, 3075673, 3099998, 3105938, 3239723, 5105271, 5110068, 5110069, 5110070, 5110071, and 5110072. True and correct

copies of these federal trademark registrations are attached collectively as Exhibit A to the Complaint in this action.

### III. EFFORTS TO COMBAT COUNTERFEITERS AND INFRINGERS

12. UGAA manages the licensing, usage and protection of the academic and athletic trademarks held and registered by UGAA, the management of which is delegated to the Office of External Operations.

13. Authorization by UGAA is required for the private or commercial use by any person, firm, association, corporation, institution, or other entity of any of the UGAA Marks.  UGAA has instituted guidelines with respect to the usage of the UGAA Marks, as well as other trademarks under its purview.  UGAA's Office of External Operations ensures that authorization of use of the UGA Marks is granted in compliance with applicable guidelines, which include, but are not limited to, a prohibition on the use of the UGAA Marks in conjunction with tobacco products, drugs, political candidates or political issues, sexually oriented goods, or any goods or services which do not meet UGAA's minimum standards with respect to the nature and quality of such goods and services.

14. Protecting trademarks is one key element of maintaining trademark rights.  The UGAA Marks are protected through a wide variety of means, and

university faculty, students, staff, alumni, and friends are asked to be vigilant advocates for the protection of the UGAA Marks.

15.  UGAA has also contracted with Fanatics Licensing Management, one of the nation's leading collegiate licensing and marketing firms, to enhance UGAA's efforts in managing and protecting its trademarks and brand.

16.  Despite the forgoing, UGAA's reputation for excellence and national profile, particularly after winning this year's College Football National Championship, subject UGAA and products bearing the UGAA Marks to frequent counterfeiting, both online and offline.  Many third parties use the UGAA Marks without authorization on or in connection with the advertising and sale of a variety of products, including products that are not permitted under UGAA's licensing policies.  The sale of unauthorized products bearing counterfeit and infringing copies of the UGAA Marks poses a real threat to both UGA's and UGAA's reputation, to the sustainability of UGAA's licensing business, and to the individuals and companies who unwittingly purchase them.

17.  Unauthorized products bearing counterfeit and/or infringing marks are not required to comply with federal safety or labeling standards.  Moreover, these products do not meet our quality and licensing standards, thus eroding UGAA's valuable reputation and goodwill.  If consumers are dissatisfied with the quality of

the counterfeit product they purchase, that displeasure will be attributed to UGA, UGAA, and/or UGAA's authorized licensees. The availability of counterfeit products also costs UGAA considerable lost revenue and harms its relationships with its authorized licensees. Unauthorized use of the UGAA Marks also devalues the goodwill associated with and corrodes UGAA's exclusive rights in the UGAA Marks.

18. UGAA, directly and through third party vendors, regularly uses standard notice and takedown procedures to remove counterfeit and infringing goods from the Internet. Despite these efforts, counterfeit and infringing products continue to be readily available through major e-commerce marketplaces, including but not limited to: Alibaba, AliExpress, Amazon, DHGate, Joom, and Wish (each a "Marketplace" and collectively the "Marketplaces"). In my experience, the Marketplace intellectual property rights ("IPR") notice and takedown mechanisms have not been fully effectual in our continuing fight against the marketing and sale of counterfeit products bearing the UGAA Marks.

## IV.   IDENTIFYING COUNTERFEITERS AND INFRINGERS

19. We can typically identify counterfeit versions of genuine licensed products by visual inspection, including the type, labeling, packaging materials, and price at which the products are sold. Working together with The Sladkus Law Group,

we have confirmed that each Defendant is selling non-genuine products bearing one or more marks that are identical or confusingly similar to at least one of our UGAA Marks. To the best of my knowledge, none of the Defendants is, or has ever been, authorized to manufacture, market, or distribute any products bearing the UGAA Marks, and UGAA has never licensed any of the Defendants to use any of the UGAA Marks.

## DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States that the foregoing facts are true and correct to the best of my knowledge, information, and belief, and that I signed this declaration on the date set forth below.

By: _____     Date: 5/3/2022